IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**LARRY EUGENE LINGENFELTER,**

             **Petitioner,**

v.                                         **CRIMINAL ACTION NO. 2:10-CR-153**

**UNITED STATES OF AMERICA,**

             **Respondent.**

## *MEMORANDUM OPINION AND ORDER*

Before the Court is Larry Eugene Lingenfelter's ("Petitioner") second Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). ECF No. 229 ("Pet'r's Mot."). The Government opposed the motion. ECF No. 241 ("Resp. Opp'n"). This matter is now ripe for judicial determination. For the reasons below, Petitioner's motion is **DENIED**.

### I.    FACTUAL AND PROCEDURAL HISTORY

On September 22, 2010, Petitioner was named in a Three Count Indictment: Count One charged Petitioner with Conspiracy to Commit Murder for Hire, in violation of 18 U.S.C. § 1958(a), and Counts Two and Three charged Petitioner with Murder for Hire, in violation of 18 U.S.C. §§ 1958(a) and 2. ECF No. 93. A six-day jury trial began on January 25, 2011. ECF Nos. 73–79. A jury convicted Petitioner on all Counts on February 1, 2011. ECF No. 80. On May 18, 2011, the Court sentenced Petitioner to 110 months' imprisonment on each count to be served consecutively for a total of 330 months, followed by three years of supervised release. ECF No. 93. Petitioner appealed, and the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") affirmed the conviction on April 3, 2012. ECF Nos. 94, 110. On October 3, 2022, Petitioner filed a *pro se* Motion for Compassionate Release. ECF No. 178. Petitioner then filed a

1

Motion for Compassionate Release through counsel on November 2, 2022. ECF No. 186. The Court collectively construed the motions as a single motion and denied the motion on May 31, 2023. ECF No. 217.

According to the Presentence Investigation Report ("PSR"), from around March 2010 through around June 29, 2010, Petitioner conspired with Joseph Frampton ("Codefendant") to cause Codefendant to travel from Portsmouth, Virginia to Harker Heights, Texas, with the intent to murder Petitioner's ex-wife for $10,000. ECF No. 233 ¶ 7. In June 2010, Petitioner's ex-wife returned home and encountered Codefendant standing in her hallway. *Id.* ¶ 21. According to Petitioner's ex-wife, Codefendant was there to warn her about Petitioner. *Id.* Codefendant testified against Petitioner at trial and stated that the two discussed getting rid of Petitioner's ex-wife so he could have custody of his children, no child support, and Social Security survivor benefits. *Id.* ¶ 31. There were three unsuccessful attempts to kill Petitioner's ex-wife. *Id.* ¶ 41. Codefendant testified that, on the third attempt, he changed his mind during his drive from Virginia to Texas and decided to talk to Petitioner's ex-wife about custody and child support. *Id.* ¶ 40. Petitioner denied the essential factual elements of guilt and went to trial. *Id.* ¶ 55. The PSR assessed Petitioner with a total offense level of 41, a criminal history category of I, and a recommended Guidelines sentence of 324 to 405 months. *Id.* ¶¶ 108–110. Petitioner has no history of psychological or psychiatric treatment. *Id.* ¶ 78. Petitioner has not reported a substance abuse issue. *Id.* ¶ 79–81. Petitioner is incarcerated at FCI Otisville with a projected release date of April 13, 2034.[1]

On January 2, 2024, Petitioner submitted a Request for Compassionate Release to the Warden. ECF No. 230. The Warden has not responded to Petitioner's request.

---

[1] *See* Federal Bureau of Prisons, "Find an Inmate," *BOP.gov*, https://www.bop.gov/inmateloc/ (last visited Oct. 15, 2024).

## II.     LEGAL STANDARD

### A. The Threshold Requirement Standard

A petitioner may bring a motion to modify their sentence after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [petitioner]'s behalf or the lapse of 30 days from the receipt of such a request by the warden of the [petitioner]'s facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release has two options after requesting that the Bureau of Prisons ("BOP") bring a motion on their behalf: (1) exhaust their administrative remedies; or (2) wait 30 days from the date of their initial request to the BOP. *United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) ("§ 3582(c)(1)(A) outlines two routes – one of which does not require exhaustion of administrative remedies.").

In other words, a petitioner may satisfy the threshold requirement if they "request[] the Bureau of Prisons to bring a motion on their behalf and *either* fully exhaust[] all administrative rights to appeal the Bureau's decision *or* wait[] 30 days from the date of their initial request to file a motion in the district court." *Id.* (emphasis in original). Thus, a petitioner who made a request to the BOP at least 30 days prior may seek compassionate release with the district court whether the BOP has ruled on the request or not. *Id.* (holding petitioner satisfied the threshold requirement by filing his compassionate release motion 149 days after submitting a request to the warden, which the warden denied) (citing *United States v. Garrett*, 15 F.4th 335, 338 (5th Cir. 2021); *United States v. Harris*, 973 F.3d 170, 171 (3rd Cir. 2020); and *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020)). Moreover, the threshold requirement is a non-jurisdictional claim-processing rule, and thus may be waived or forfeited if not timely raised. *Id.* at 129-30 (collecting cases from sister circuits holding the same).

## B. The Compassionate Release Standard

As amended by the First Step Act, a court may modify a term of imprisonment by motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" is defined by the United States Sentencing Commission ("Sentencing Commission") in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13. Yet after the First Step Act amended § 3582(c)(1)(A) to allow defendants to petition the district court directly without clearance from the BOP, U.S.S.G. § 1B1.13 became advisory and nonbinding on courts' application of § 3582(c)(1)(A) because § 1B1.13 was no longer an "applicable" Sentencing Commission policy statement. *See United States v. McCoy*, 981 F.3d 271, 276, 283 (4th Cir. 2020). Courts were thus "empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id.* at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)). The most recent amendments to the Sentencing Guidelines went into effect on November 1, 2023, and U.S.S.G. § 1B1.13 now contemplates that a defendant may file a motion for compassionate release directly with the district court. *See* U.S.S.G. § 1B1.13(a) (2023). Therefore, § 1B1.13 is now an "applicable" policy statement under § 3582(c)(1)(A), and the Court must ensure that a sentence reduction granted under § 3582(c)(1)(A) is "consistent with" that Guideline. 18 U.S.C. § 3582(c)(1)(A); *see Brown*, --- F. Supp. 3d ---, No. JKB-08-00415, 2023 WL 8653179, at *2 (D. Md. Dec. 13, 2023).

Section 1B1.13(b) identifies five broad categories by which defendants may demonstrate extraordinary and compelling reasons to reduce a sentence: (b)(1) medical circumstances; (b)(2) the defendant's age; (b)(3) family circumstances; (b)(4) whether the defendant was a victim of

abuse; (b)(5) other reasons (catch-all provision);[2] and (b)(6) whether the defendant received an unusually long sentence. § 1B1.13(b)(1)–(6). Therefore, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, when evaluating whether extraordinary and compelling circumstances exist to modify a sentence under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

#### A. The Threshold Requirement

The Court finds that Petitioner has satisfied the threshold requirement. The Government does not contest such. *See* Resp. Opp'n. On January 2, 2024, Petitioner submitted a Request for Compassionate Release to the Warden. ECF No. 230 at 10. The Warden has not responded to Petitioner's request for more than 30 days. Thus, Petitioner meets the threshold requirement.

#### B. Petitioner's Compassionate Release Request

The Court now addresses whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence. For the following reasons, Petitioner's arguments are without merit and do not constitute extraordinary and compelling reasons.

##### i. Extraordinary and Compelling Reasons

Petitioner argues that the following constitute extraordinary and compelling reasons for his release: (1) a change in law has created an unusually long sentence; (2) Petitioner's medical conditions; (3) unusually harsh prison conditions; (4) risks associated with contracting COVID-19; and (5) Petitioner's rehabilitation. *See* Pet'r's Mot. at 11–36. The Court will address each of these arguments in turn.

---

[2] This catch-all provision allows courts to continue to exercise discretion in considering "any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284; *see Brown*, 2023 WL 8653179, at *2 ("This catchall maintains the broad discretion conferred on district courts to consider a wide array of extraordinary and compelling justifications for release.").

### a. Change in Law

Petitioner argues that there are extraordinary and compelling reasons for his compassionate release under U.S.S.G. § 1B1.13(b)(6) because he has served over 10 years in prison, and he has an unusually long sentence. Pet'r's Mot. at 11. Petitioner further argues that if Petitioner were resentenced today, the Court would not impose the leadership enhancement. *Id.* at 11–12. Petitioner also contends that there is a gross disparity between his sentence and the sentence of Codefendant that constitutes an extraordinary and compelling reason under U.S.S.G. § 1B1.13(b)(5). *Id.* at 11. The Government argues that even though Petitioner has served 10 years of his sentence, he identifies no change in law that would serve as an extraordinary and compelling reason for his release. Resp. Opp'n at 7. The Government further argues that there is no gross disparity in his sentence because the disparity in sentences between Petitioner and Codefendant are justified by the circumstances of this case. *Id.* at 16. Additionally, the Government argues that because Codefendant accepted a guilty plea and testified against Petitioner, and Petitioner went to trial, the cases are distinct from one another. *Id.*

Petitioner has not established an extraordinary and compelling reason for his compassionate release under U.S.S.G. § 1B1.13(b)(6). Section 1B1.13(b)(6) provides that if a petitioner has an unusually long sentence "and has served at least 10 years of the term of imprisonment, a change in the law… may be considered in determining whether the [petitioner] presents an extraordinary and compelling reason… but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed" when the motion is filed. Petitioner has served more than 10 years in prison. However, Petitioner does not identify a change in law.

Even if Petitioner did present a change in the law, there is no indication that Petitioner's

6

sentence would be different if he were resentenced today. Petitioner argues he would not receive the leadership role enhancement if he were resentenced today. Pet'r's Mot. at 23. But this is false. The Fourth Circuit affirmed Petitioner's conviction on appeal, stating that Petitioner's conduct "fully merited a sentencing enhancement." *United States v. Lingenfelter*, 473 F. App'x 303, 305 (4th Cir. 2012). Petitioner's conduct establishes that he had a leadership role in the offense, and there is no evidence to suggest that would be different today. *See* U.S.S.G. § 3B1.1 n.4.

Further, Petitioner does not present an extraordinary and compelling reason for his release by asserting there is a sentencing disparity between himself and Codefendant. (Defendants who cooperate with the Government are not similarly situated to defendants who do not). *See United States v. Gillespie*, 27 F.4th 934, 945 (4th Cir. 2022) (citing *United States v. Susi*, 674 F.3d 278, 288 (4th Cir. 2012)). Here, Codefendant pled guilty and testified against Petitioner at trial. Petitioner and Codefendant are not similarly situated—comparing them would be comparing "apples to oranges." *United States v. Lester*, 816 F. App'x 780, 799 (4th Cir. 2020). Thus, Petitioner does not assert an extraordinary and compelling reason for his compassionate release based on a change in law.

### b. Medical Conditions

Petitioner argues that his medical issues are extraordinary and compelling reasons for his release. Pet'r's Mot. at 12–22. To be an extraordinary and compelling reason, Petitioner must prove that his medical conditions "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he [] is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B).

Petitioner has not proven that his medical circumstances are extraordinary and compelling reasons for his release. Here, Petitioner, age 54, asserts he suffers from fifteen different conditions:

7

hypertension, gout, prediabetes, bradycardia, post-traumatic stress disorder (PTSD), arthritis, spinal stenosis, high cholesterol, retinopathy, farsightedness, astigmatism, presbyopia, bruxism, hearing loss, and migraine headaches. *Id.* Petitioner merely claims that he suffers from these conditions and that courts have granted compassionate release to defendants with these conditions. However, he makes no showing that these conditions substantially diminish his ability to provide self-care in a correctional facility. Additionally, Petitioner fails to establish that the BOP cannot manage his health needs. *See United States v. Freeman*, 617 F. Supp. 3d 386, 397 (E.D. Va. 2022), *aff'd* 2023 WL 4797316 (4th Cir. July 27, 2023) (holding there was no sufficient basis for compassionate release where petitioner received "comprehensive care" and had the "ability to care for himself while in prison"). In fact, Petitioner's conditions are being treated by BOP healthcare providers. Petitioner has been prescribed Allopurinol for his gout, and Lisinopril for his hypertension. (sealed medical records) ECF No. 230 at 22. His psychiatric evaluation placed him within normal limits, and he reported no mood, sleep, or energy impairments. *Id.* at 20. Petitioner himself reported feeling good and having no complaints at his Chronic Care Clinic encounter. *Id.* at 16. It appears that Petitioner's conditions are "chronic conditions that can be managed in prison," and they do not constitute extraordinary and compelling reasons for compassionate release. *United States v. Freeman*, 617 F. Supp. 3d at 397. Thus, Petitioner has not presented an extraordinary and compelling reason for his release because of his medical conditions.

### c. Harsh Prison Conditions

Petitioner argues that he has experienced unusually harsh prison conditions. Pet'r's Mot. at 28. Petitioner states these conditions are a consequence of the measures taken to control the spread of COVID-19. *Id.* Petitioner further contends that many of the prisoners are very dangerous and that prisons are unsafe because they are understaffed. *Id.* at 29. The Government argues that

unusually harsh prison conditions do not justify release, and if they did, courts have refused to release prisoners where the conditions were equally applicable to all prisoners. Resp. Opp'n at 17–18.

Petitioner's purported hardships do not constitute extraordinary and compelling reasons for compassionate release. The pandemic has undoubtedly made the conditions of imprisonment more difficult, but "harsh conditions in a BOP facility alone do not create an extraordinary and compelling reason for release." *United States v. Ogun*, 657 F. Supp. 3d 798, 810 (E.D. Va. 2023). Every inmate must deal with these conditions in response to COVID-19. *Id.* Conditions that "generally apply to every prisoner within a given facility and are neither unique to [Petitioner] nor extraordinary in the broader context of the global pandemic" do not warrant compassionate release. *United States v. Fuentes*, 2022 WL 3581392, at *7 (E.D. Va. Aug. 19, 2022). Thus, Petitioner has failed to establish that prison conditions present extraordinary and compelling reasons for his compassionate release.

### d. COVID-19

Petitioner argues that he is at an increased risk of severe complications from COVID-19. Pet'r's Mot. at 29. Petitioner argues that correctional facilities are high-risk environments that pose danger to prisoners with pre-existing conditions. *Id.* at 31. Petitioner avers that COVID-19 remains prevalent and his concern about contracting the disease justifies his compassionate release. *See id.* The Government argues that Petitioner has not established that his risk of COVID-19 justifies his release. Resp. Opp'n at 19.

Petitioner has not proven that COVID-19 is an extraordinary and compelling reason for his compassionate release. When a petitioner seeks relief under this theory, courts have required them to demonstrate "both a particularized susceptibility to the disease and a particularized risk of

contracting the disease at his prison facility." *United States v. Reams*, 847 F. App'x 199, 199 (4th Cir. 2021) (citing *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020)).

Here, petitioner does not show a particularized susceptibility to contract COVID-19. Petitioner's vaccination status mitigates his particularized susceptibility. *See United States v. Brown*, 78 F.4th 122, 129 (4th Cir. 2023) (affirming the district court's holding that the risk posed by COVID-19 did not create an extraordinary and compelling reason for release). There is no "per se rule that an individual cannot establish an 'extraordinary and compelling reason' for release based on COVID-19 if he refused the vaccine." *Id.* But where a petitioner makes no argument that he was "unable to receive or benefit from the vaccine," and instead "appears to have refused the vaccine because he questioned its efficacy," his vaccination status mitigates his particularized susceptibility to COVID-19. *Id.* Petitioner's medical records state that "COVID precautions [were] reviewed with patient, he refused vaccine and I begged him to please reconsider." ECF No. 230 at 25. Petitioner makes no argument that he was unable to receive or benefit from the vaccine. Petitioner appears to have refused a vaccine that could "virtually eliminate" his risk. *Brown*, 78 F.4th at 129. Thus, his vaccination status mitigates his particularized susceptibility to COVID-19. *See id.*

Even if Petitioner has shown particularized susceptibility, he fails to prove there is a particularized risk of contracting COVID-19 at FCI Otisville. Petitioner argues that there are institutions in the BOP with a new strain of the virus. Pet'r's Mot. at 30. Petitioner further argues he knows of other federal institutions where the new variant is present. *Id.* at 31. This argument is insufficient: a petitioner must show a "particularized risk of contracting the disease at *his prison facility*." *Reams*, 847 F. App'x at 199 (4th Cir. 2021) (emphasis added). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone

10

cannot independently justify compassionate release." *Feiling*, 453 F. Supp. 3d at 841 (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). Further, as of October 9, 2024, FCI Otisville has zero active cases of COVID-19.[3] Accordingly, the court is "unconvinced that Defendant has a particularized risk of contracting COVID-19 at his facility." *Ogun*, 657 F. Supp. 3d at 810. Petitioner makes no claims asserting he has a particularized risk of contracting COVID-19 at FCI Otisville. Thus, Petitioner fails to demonstrate that COVID-19 is an extraordinary and compelling reason for his release.

### e. Rehabilitation

Petitioner argues that he is rehabilitated and remorseful for his actions and contends that he has taken advantage of every rehabilitation program available to him. Pet'r's Mot. at 36. The Government argues that Petitioner's rehabilitation is not an extraordinary and compelling reason for his release. Resp. Opp'n at 21.

Petitioner's purported rehabilitation does not serve as an extraordinary and compelling reason for his release. Rehabilitation of a petitioner "is not, by itself, an extraordinary and compelling reason," but it "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d). Petitioner contends that he has taken advantage of every rehabilitation program offered to him. Pet'r's Mot. at 36. Further, Petitioner avers that he is remorseful about his past conduct, that he is sorry to whom he has harmed, and that he is a changed man. *Id.* Petitioner has had several people submit letters on his behalf bolstering his claims. *See, e.g.*, ECF Nos. 241–248.

However, some of Petitioner's behaviors suggest that he is not rehabilitated. In the six

---

[3] BOP, *COVID-19 Cases*, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited Oct. 7, 2024).

11

months leading up to his motion, Petitioner was cited for threatening bodily harm. ECF No. 230 at 3. Before that, Petitioner was sanctioned seven times for his conduct in prison. *See* ECF No. 189-2. Most recently, the Government filed a Supplement to its Response in Opposition sharing a text message Petitioner sent to his ex-wife, the intended victim in this case. ECF No. 260 ("Supp. Resp. Opp'n"). In this message, Petitioner is berating his ex-wife about their children and his sentence. *Id.* Petitioner has continued to harass her from prison. This behavior is not consistent with the behavior of someone who is remorseful for his actions. Petitioner's rehabilitation appears marginal at best and carries little to no weight when combined with the other circumstances of this case. Thus, Petitioner's rehabilitation does not constitute an extraordinary and compelling reason for his release.

    ii.    **3553(a) Factors**

Even if Petitioner correctly asserted an extraordinary and compelling reason for his compassionate release, the 18 U.S.C. § 3553(a) factor's do not support Petitioner's release.

Petitioner argues that the factors weigh in favor of Petitioner because a reduction of sentence would not undermine the goals of Petitioner's original sentence. Pet'r's Mot. at 37. Petitioner argues that under § 3553(a)(1), the Court must consider evidence of his post-conviction rehabilitation. *Id.* at 38. Next, Petitioner argues that he is not a danger to the public, and thus the factor aimed at protecting the public from further crimes weighs in Petitioner's favor. *Id.* at 41. Finally, Petitioner argues that even though Petitioner's offense is "undeniably serious," early release will not undermine respect for law. *Id.* at 39–40. The Government argues that Petitioner's behavior while incarcerated, paired with the seriousness of the offense, weigh strongly against his compassionate release. Resp. Opp'n at 25.

As noted above, the Court has serious concerns about Petitioner's rehabilitation. These

concerns also call into question whether Petitioner presents a danger to the public. On one hand, Petitioner has completed courses and taken opportunities to better himself. Pet'r's Mot. at 38. The Court commends Petitioner for his achievements during incarceration, but "they do not outweigh the Court's findings as to the other factors." *United States v. Woolridge*, 2021 WL 415131 (E.D. Va. Feb. 5, 2021). He has also received letters from family and friends in support of his Motion. On the other, Petitioner has been sanctioned seven times for his conduct in prison. *See* ECF No. 189-2. Petitioner's most recent violation is for threatening bodily harm. ECF No. 230 at 3.

Petitioner has also contacted his ex-wife, his intended victim in this case, two times despite a Court Order prohibiting contact. *See* ECF Nos. 189-3, 260. In the most recent contact, on July 26, 2024, Petitioner sent his ex-wife a message outlining his grievances with her. *See* ECF No. 260. Petitioner accuses his ex-wife of lying three times, tells her that if she "keep[s] pushing" she will push herself out of their daughters' lives, and expresses his frustration with the length of his sentence several times. *Id.* This harassing message is hardly the mark of someone who is rehabilitated. Petitioner cites *Pepper v. United States*, 562 U.S. 476 (2001) for the proposition that a district court "cannot artificially limit itself to a defendant's past history and circumstances while ignoring more recent developments." Pet'r's Mot. at 38. But this is precisely why Petitioner's argument fails: recent developments clearly demonstrate that Petitioner is not rehabilitated. The Court acknowledges and commends Petitioner for his self-improvement during his incarceration. However, Petitioner's conduct during incarceration shows marginal rehabilitation.

Further, the seriousness of Petitioner's conduct for the underlying offense remains the same. Petitioner conspired to murder his ex-wife for $10,000. PSR ¶ 7. Petitioner made three unsuccessful attempts on his ex-wife's life. *Id.* ¶ 41. But-for Codefendant's change of heart, Petitioner may have been successful. *Id.* ¶ 40. Thus, the Court imposed a sentence to reflect the

seriousness of the offense, promote respect for the law, and provide just punishment for the offense. In balancing the relevant § 3553(a) factors, the Court concludes the § 3553(a) factors weigh against Petitioner's release.

## IV. CONCLUSION

For the foregoing reasons, Petitioner has not shown an extraordinary and compelling reason to grant compassionate release. Thus, Petitioner's Motion for Compassionate Release is **DENIED**. ECF No. 229.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Norfolk, Virginia
October /7 , 2024

Raymond A. Jackson
United States District Judge